UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | 22-MJ-188 |
| | : | |
| WILLIAM A. FOSTER, | : | |
| Defendant. | : | |
| | : | |

**GOVERNMENT'S MEMORANDUM IN SUPPORT OF PRE-TRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that the defendant, William A. Foster, be detained pending trial. The government seeks Foster's detention pursuant to 18 U.S.C. § 3142(f)(1)(e) (offense involving a firearm).

A detention hearing is appropriate under 18 U.S.C. § 3142 (f)(1)(E) because the defendant is charged with a felony involving the possession of a firearm. The government is prepared to proceed to argument at a detention hearing to be scheduled. Under the Bail Reform Act, the Government may proceed by way of proffer. *See*, *e.g.*, *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996); *United States v. Hong Vo*, 978 F. Supp. 2d 41, 42 (D.D.C. 2013).

Based on the nature and circumstances of the offense, the strength of the evidence, the defendant's history and characteristics, and the danger to the community, the government respectfully requests that the Court hold the defendant without bond pending trial to ensure the safety of the community, as he cannot overcome the rebuttable presumption in favor of detention.

## BACKGROUND

### Factual and Procedural Background

The defendant, William Foster, is currently on post-sentencing supervision for a 2017 robbery conviction. The term of supervised release is set to expire February 4, 2024.

**December 23, 2020 Search Warrant and Arrest**

On December 23, 2020, the Metropolitan Police Department previously executed a D.C. Superior Court search warrant at 1025 13th ST SE, Apartment #22, Washington, DC 20003. Among other facts, the supporting affidavit for the warrant noted that on December 21, 2020, MPD received a 911 call for service from an anonymous citizen tip stating that there was "a lot of drug selling" at the address "All day and "All night" and "His name is Shugg…not sure on the spelling…. He is approximately 5'10 245 lbs. bushy black hair, mustache and beard, dark complexion. He wares [sic] ankle bracelet, possibly on house arrest or parole." While querying the address in law enforcement databases, the affiant, MPD Officer Possinger, discovered that FOSTER – who he and other officers were familiar with as frequently standing in front of 1025 13th Street SE, and whom the officer knew had an ankle monitor, beard and mustache, and was approximately 5'10, 250 lbs – carried the address. Officer Possinger also knew that FOSTER went by "Suge" or "Supersavage Suge."

When the warrant was executed, defendant Foster, an individual with initials R.B., and a third individual, were present in the apartment.

In a bedroom that the lease holder of the apartment, Foster's mother, confirmed to law enforcement that Foster stays in, Officers located two handguns sitting on the shelf inside of the bedroom closet in a green cosmetics bag, a Kel-Tec P-11, 9mm handgun, and a Ruger P90 .45 caliber handgun. Officers located Foster's District of Columbia identification card hanging inside of a small shoulder bag, which was hanging on the same closet door where both handguns were recovered. Officers also recovered a 1/3 full half ounce vial of suspected Phencyclidine (PCP), an

2

eye dropper, and gloves in a bag. Additionally, they recovered numerous small zips underneath the bed.

Subsequent FBI DNA analysis testing swabs from the firearms indicated that there was "very strong support" for Foster's inclusion on the Kel-Tec handgun (Likelihood ratio of 250 trillion). There was also "limited support" for Foster's inclusion on the Ruger P90 handgun (Likelihood ratio of 46).

On the same day that the firearms were found, December 23, 2020, the District of Columbia Housing Authority issued a Barring Notice against Mr. Foster, barring him to entry from the entire property at 1025 13th ST SE, based on possession of an unregistered firearm and possession of narcotics while armed. The bar – which, as noted below, Mr. Foster's mother suggested Foster was aware of based on her statements to police on May 14, 2022 – was effective for five years.

**May 14, 2022 Police Calls**

On May 14, 2022, police were called two times to 1025 13th ST SE, Apartment #22. In the early morning, the female resident of 1025 13th ST SE, Apartment #22, who identified herself as Monique Wheeler (Foster's mother), called the police. Ms. Wheeler stated that her son's "baby mother," who lives in neighboring unit #23, was angry at her son and broke the door and window at 1025 13th ST SE, Apartment #22 as a result. She called in the neighbor from unit #23, the mother of her son's "baby mother," to discuss what had happened, and the neighbor from unit #23 referred to Ms. Wheeler's son as "Shug." (Foster is known to go by "Suge" or "Supersavage Suge.") Later that afternoon, the same neighbor in #23 called the police and was visibly upset and agitated. She reported that she needed assistance in addressing the "drama" with unit #22. She stated that Ms. Wheeler's son had put a gun to her and her family. She specifically complained

3

that the "son" had threatened her family due to an argument with her daughter. The neighbor stated that the son was "just outside" – appearing to indicate he was outside her apartment window – and "waving a m—f—ing gun" at her "less than 30 minutes ago." The neighbor complained that he had a "child across the hall" – thus implying that he resided on the other side of the hall in unit #22 – and yet wanted to "shoot the f-ing house up." Ms. Wheeler stated to the police officers that her son did not live in unit #22, because he had been barred from the building and was not allowed inside. The neighbor expressed disbelief at this statement, indicating that she had seen the son get into the building.

**August 17, 2022 Search Warrant and Arrest**

On August 17, 2022, MPD executed a U.S. District Court for the District of Columbia search warrant at 1025 13th ST SE, Apartment #22, Washington, DC 20003. The supporting affidavit for the warrant noted that probable cause to believe evidence of narcotics trafficking could be found in the home, because, among other things, Foster frequently posts on his Instagram account displaying controlled substances including apparent oxycodone (a Scheduled II substance), marijuana (a Schedule I substance), and promethazine hydrochloride (a Schedule V substance when combined with codeine) and advertising large quantities and prices consistent with the intent to distribute.

During the month of December 2021 and May and June 2022, Foster posted several images on his Instagram account depicting different varieties and quantities of narcotics for sale. For example, in December 2021, Foster posted what appears to be marijuana, several dozens of apparent oxycodone hydrochloride pills and "Promethazine 6.25 mg" brown syrup bottles,

4

respectively. The medication, which requires that a prescription be issued by a physician, does not appear to be prescribed to Foster and thus is not depicting his name.



*Photographs from the defendant's Instagram displaying controlled substances including apparent oxycodone (a Scheduled II substance), marijuana (a Schedule I substance), and promethazine hydrochloride (a Schedule V substance when combined with codeine).*

When the search warrant of 1025 13th ST SE, Apartment #22 was executed, defendant Foster and his mother, Ms. Wheeler, were present in the apartment. Law enforcement knocked and announced their presence at the door. A female individual, later identified as Wheeler, opened the door for the officers. While law enforcement was announcing themselves at the door, MPD officers stationed outside the apartment unit observed a black male figure in a second-floor bedroom window of Apartment #22. The black male looked out the window and peeled something away from the window and then did not reappear in the window. The window had an air conditioner.

Wheeler and Foster were the only individuals within the three-bedroom apartment when the search was conducted. Foster was the only male within the apartment. Foster was located

5

within the apartment, notwithstanding the five-year barring notice issued by the D.C. Housing Authority for his prior possession of unregistered firearms and narcotics on the property.

In the back bedroom with the air conditioner, next to the air conditioner, a cardboard spacer that appeared to have previously been between the air conditioner and window jamb had been removed from the window. This is the same window that law enforcement witnessed a male subject look out from at the time law enforcement knocked on the apartment door. It is also the same bedroom identified in December 2020 as Foster's bedroom, where the Kel-Tec and Ruger firearms were seized.

Within that bedroom, law enforcement seized a tan-colored Glock-26 9mm handgun bearing serial number VHU667 from a shoebox on the floor next to the closet. Law enforcement also observed an extended magazine and loose rounds of ammunition on the floor by the closet and seized a bag of ammunition nearby to the air conditioner. The extended magazine was loaded with 31 rounds of ammunition. The bedroom included mail matter bearing the defendant's name at the searched address.


*Firearm within a shoebox observed during the search of bedroom in 1025 13th ST SE, Apartment #22, Washington, DC.*


*Bag of ammunition rounds seized from nearby the air conditioner in bedroom.*

7

The bedroom also contained a diamond chain with pendant "SS" and "1K" on the bedside table, right next to the closet, which Foster frequently is seen wearing on his Instagram account. Your affiant is aware that Foster goes by the nickname "Suge" or "Supersavage Suge," or "SS" for short. Officers also observed male shoes size 10.5 and male clothing in the bedroom, including a light blue hooded sweatshirt consistent with a hooded sweatshirt FOSTER was seen by ATF wearing on August 1, 2022. Officers also observed what appeared to a photo showing FOSTER and several other individuals dated April 22, 2018, in the closet.

During and after the search, Foster stated that the bedroom in which the firearm, magazine, and ammunition were seized was not his bedroom. However, as Foster was looking for shoes to wear to the station, he acknowledged that his shoes were within the bedroom that contained the firearm and ammunition. Foster claimed to officers that he stayed in a different bedroom within the apartment, but an ID card and social security card identifying R.B. was found within that bedroom.

In a video posted to Instagram on August 9, 2022, Foster is seen holding a Glock handgun of the same size and color as the handgun seized during the search (i.e., a tan-colored, small, or "baby" Glock).

**Procedural History**

On August 18, 2022, the Honorable Robin M. Meriweather found probable cause to issue a complaint charging the defendant with one count of 18 U.S.C. § 922(g)(1) (Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable by Imprisonment for a Term Exceeding One Year).

An initial appearance for the defendant occurred before the Honorable Robin M. Meriweather on August 23, 2022, when the government moved orally for detention pending trial. A detention hearing is scheduled for September 6, 2022.

## Relevant Legal Authorities

This Court may detain a defendant upon motion of the government in a case that, as here, involves a felony crime which involved a firearm. 18 U.S.C. § 3142(f)(1)(e) (offense involving a firearm). The government has the ultimate burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by the lesser standard of a preponderance of the evidence that the defendant presents a risk of flight – even where it is presumed that those standards are satisfied. Relevant to that ultimate determination are the four factors under 18 U.S.C. § 3142(g) – namely, (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including the person's past conduct and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

## ARGUMENT

The government respectfully submits that there is no condition or combination of conditions that would assure the safety of the community or the defendant's appearance at future proceedings. Three firearms have been seized from the defendant's apparent bedroom on two occasions. During both offenses, the defendant has been on post-sentencing supervised release for a 2017 felony robbery conviction, and during the latter, the defendant was present at the apartment in further violation of a D.C. Housing barring notice. The first offense occurred mere months after

the defendant was released from incarceration for his prior conviction. The defendant has a history of non-compliance with post-sentencing supervised release.

**I.      Nature and Circumstances of the Offenses Charged**

The nature and circumstances of the offenses charged weighs in favor of detention. As described above, law enforcement has executed two search warrants at the defendant's residence. The searches were conducted 18 months apart. During each, the Defendant – a convicted felon - was subject to post-conviction supervised release and wearing an ankle monitor. During each search, law enforcement seized firearms and ammunition from the defendant. Moreover, the defendant has allegedly used a firearm to threaten members of the community, including, as suggested by the May 2022 incident in which the police were called, the mother and grandmother of his child.

One of the firearms seized in December 2020 was a Ruger P90 .45 caliber handgun. The second handgun was a Kel-Tec P-11, 9mm handgun. Officers also discovered three magazines loaded with ammunition inside of the same green cosmetics bag. FBI DNA testing indicated that there was very strong support for Foster's inclusion on the Kel-Tec firearm and limited support for Foster's inclusion on the Ruger P90 firearm. Foster's mother confirmed that this bedroom was his.

During the August 17, 2022 search, a tan-colored Glock-26 9mm handgun bearing serial number VHU667 was seized from a shoebox on the floor of that same bedroom in which the two firearms were recovered in December 2020. Law enforcement also observed an extended magazine and voluminous loose rounds of ammunition on the floor and in a bag in the bedroom. Numerous indicia, detailed above, corroborated that this was Foster's bedroom.

Based on the nature and circumstances of the offense, there is no condition, or combination of conditions, that can assure the safety of the community.

II.     **Weight of the Evidence Against the Defendant**

The second factor to be considered, the weight of the evidence, also favors detention. Regarding the two firearms seized in December 2020, lawfully obtained DNA evidence from both firearms shows strong support that Mr. Foster had possession of one firearm, and limited support for his possession of a second firearm. Moreover, the firearms were seized from the bedroom used by the defendant at the time the December 2020 warrant was executed.

The firearm and ammunition seized during the August 17, 2022 search were seized from the same bedroom. During the August 17, 2022 search, law enforcement observed a black male within the bedroom where the firearm and ammunition was seized (Mr. Foster was the only male within the apartment at the time), as well as a phone in the process of being charged. They also saw male clothing (including a light blue hoodie consistent with the hoodie Foster was seen wearing by ATF on August 1, 2022) and shoes (which Mr. Foster wore to leave the apartment upon arrest), mail matter in the defendant's name, a photograph of the defendant, and a diamond chain with the pendant "SS" and "1K" – consistent with Foster's nickname "Supersave Suge" and Instagram username "1k.sicario," and which Foster is frequently seen wearing on Instagram - all within the bedroom at the time of the search. Foster was also seen displaying a Glock that appeared consistent in appearance to the firearm on Instagram just over a week prior.

III.    **Defendant's History and Characteristics**

The third factor to be considered, the weight and characteristics of the defendant, weighs strongly in favor of detention. This Court considers, among other factors, "the defendant's

character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, [and] criminal history." *United States v. Taylor*, 289 F. Supp. 3d 55, 69 (D.D.C. 2018). This Court in considering pretrial detention "may also consider prior arrests or charges brought against a defendant, even when those actions did not result in convictions." *See id.* at 70.

Mr. Foster has a significant criminal history involving firearms and violent crimes. In 2015, in D.C. Superior Court case 2014-CF2-015272, Mr. Foster was convicted of reckless driving and unauthorized use of a vehicle for reckless driving of a stolen vehicle, for which he received a suspended sentence of 180 days incarceration and supervised probation for 12 months. During Mr. Foster's suspended sentence for those convictions, Mr. Foster was arrested in D.C. Superior Court case 2015-CF2-011840 for carrying a pistol within a license. Mr. Foster's suspended sentence was revoked, and he was ordered to 90 days confinement. Subsequent to his release, while he was on *post-sentencing supervision* for his reckless driving conviction and while on *pretrial supervised release* for his firearm charge, Mr. Foster committed and was convicted of robbery in D.C. Superior Court case 2017-CF3-001571. Witnesses of the robbery alleged that Mr. Foster threatened the victims with a firearm, indicating he had a firearm, although no firearm was ever displayed. Mr. Foster was sentenced to 24 months incarceration and two years of supervised release for the 2015 firearm charge. He was also sentenced to 36 months incarceration and three years supervised release for the 2017 robbery charge.

About four months after being released to home confinement for the 2017 robbery, a search warrant revealed Mr. Foster to be in possession of two firearms in his bedroom. Eighteen months later, while still on supervised release, a search warrant again found Mr. Foster to be in possession of a different firearm and ammunition in his bedroom.

Mr. Foster also has a history of recent non-compliance with the other terms of his post-sentencing supervision. In July and August 2022 alone, Mr. Foster has missed four drug tests and tested positive for marijuana during four drug tests conducted as part of his post-sentencing supervision.

All the above concerns are only augmented by some of the facts about the defendant uncovered in the investigation to date. The above offenses occurred whilst the defendant was already on high intensity supervision, illustrating that even stringent monitoring conditions have not deterred him from recidivating. The defendant appears to have no stable, legal employment; his day-to-day activities appear to revolve around his engagement in the drug trade. The defendant also appears to have habitually violated a barring notice against him. All these facts and characteristics unique to this defendant underscore that he poses a pronounced risk of non-compliance should he be released.

## IV.     Danger to the Community

Finally, the nature and seriousness of the danger to any person or the community posed by the defendant's release are grave. The firearms seized during the search raise grave safety concerns for the community, especially considering the report that Mr. Foster used a firearm to threaten members of his immediate community. The Glock-26 handgun recovered during the search was recovered nearby a large capacity feeding device, in addition to a substantial amount of ammunition.

Moreover, the defendant's conduct, including recent conduct, has shown a clear history of unlawful firearms possession and failures to comply with pre-trial and post-sentencing supervised release. In 2017, Mr. Foster committed and was convicted of a robbery while on a suspended

sentence. Within months of release for that conviction, Mr. Foster was again found in possession of firearms and narcotics.

Given the above assessment of all four relevant factors, no condition, or combination of conditions, can ensure that the defendant will comply with court orders and abide by appropriate release conditions. The defendant has none of the stabilizing forces of gainful employment, strong community ties, or even a fixed, stable residence that could rebut the applicable presumption of detention.

## CONCLUSION

The Court should grant the government's motion to detain the defendant, William A. Foster, pending trial.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar Number 481052

By: */s/ Marnee R. Rand*
Special Assistant United States Attorney
D.C. Bar Number 888273318
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: 202-252-7562
Email: marnee.rand2@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on August 25, 2022, I caused a copy of the foregoing motion to be served on counsel of record via electronic filing.

*/s/ Marnee R. Rand*
MARNEE R. RAND
Special Assistant United States Attorney

14